## BROWN *et al. v.* YEATS *et al.*[1]

(*District Court, S. D. New York.* November 3, 1891.)

DEMURRAGE—BROKERS' COMMISSIONS—GROSS AMOUNT OF CHARTER.

Where a charter provided for a commission to the ship-brokers of 5 per cent. "on the gross amount of charter," and also contained a stipulation allowing a certain sum daily for any detention by default of charterers, *held,* that commissions were due the brokers on demurrage collected under the detention clause of the charter, as well as on the freight.

In Admiralty.   Suit to recover ship-brokers' commissions.

*Owen, Gray & Sturgis,* for libelants.

*Wing, Shoudy & Putnam, (C. C. Burlingham,* of counsel,) for respondents.

BROWN, J.   The libelants, as ship-brokers, effected in behalf of the respondents a charter of their ship the Alex. Yeats, which contained a clause providing that "a commission of 5 per cent. on gross amount of this charter" should be due on the signing thereof.   The charter was for a voyage from Manilla to New York, and contained a stipulation allowing 45 lay days for loading, and for customary dispatch on discharge; and for any detention by default of charterers, $106.40 per day.   The demurrage collected under this clause of the charter at Manilla amounted to $24,046.40, and the freight collected amounted to $15,308.11.   The libelants, having agreed to allow two-thirds of their commissions under the charter to the respondents' agents, now claim their one-third of the stipulated commissions on the whole amount of freight and demurrage collected under the charter.   The respondents paid into court the proportion of the commissions on freight, but contest their liability for commissions on the amount collected for demurrage.

I cannot sustain the defense.   The charter expressly provides for commissions "on the gross amount of this charter."   That expression fairly and naturally imports commissions upon the gross amount earned by the ship under the provisions of the charter.   The word "demurrage" is not used in the charter.   But the provision for the payment of a specified sum per day for any detention of the ship, though in the nature of demurrage, is one of the express contract stipulations of the charter, just as explicit as the provision for the payment of freight at a specified rate.   The sum collected for detention is not by way of damages or penalty, but for the possession and use of the ship at a rate specifically agreed on.   So far as I can see, there is no reason for discriminating, as respects the right to commissions, between any of the provisions of the charter under which the vessel obtains compensation.   So far as the language of the charter goes, freight or dead freight might be excluded as well as demurrage.

The main consideration urged against this view is the further provision of the charter that the commissions were due "on the signing hereof;"

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

whereas, the claim for demurrage, it is said, could only accrue at a future time, after the detention of the vessel had occurred. But this argument, if valid, would apply to the freight as well; for the gross freight was not fixed, and could not be determined, at the time when the charter was signed, inasmuch as it gave an option to the vessel in regard to a considerable amount of the cargo at different rates of freight, and upon the exercise of this option the gross amount of freight depended.

The form of charter used in this case is a very common one, under circumstances like the present. The word "due" is plainly here used in the sense of obligation incurred, which was fixed and vested from the time of the signing of the charter, although the amount that might become payable under the different clauses of the charter, whether of freight, dead freight, or demurrage, was not then determinable. The obligation was *debitum in præsenti, solvendum in futuro*. The reason for the use of the word "due" is further explained in the evidence to be in order that the commissions agreed upon should become an insurable interest, by being made a fixed obligation of the ship.

The evidence further shows a very long custom in this country for the payment of commissions on demurrage accruing under stipulations of the charter with clauses like the present. But I do not regard this evidence of custom as essential to the libelants' claim. It was in evidence that the practice in England has for some time been to provide expressly for commissions on freight, dead freight, and demurrage, and that latterly that practice has been creeping into use with some of the ship agents here who are engaged in the English trade. Such an express clause would in one respect extend further than the present charter, since it would entitle brokers to commissions on demurrage earned in cases where the charter did not contain any provision as respects demurrage. In that case demurrage might not be covered by a clause like the present, which provides only for commissions "on the gross amount of this charter." Where the charter contains an express stipulation for demurrage at a specified rate, it is one of the subjects of the broker's negotiations; the amount earned by the vessel under the stipulation is her charter compensation for the use of the vessel beyond the time stipulated, and is within the contract exactly as much as the freight itself. In such cases, the phrase here used is of the same import as if the word "demurrage" were expressly used. Decree for the libelants, with interest and costs.